The court will proceed to the fourth case, Green v. Junious. Ms. Green. Good morning, Your Honor. And may it please the court. My name is Mary Grebe and I represent Dallas Green. Chicago Police Officer Cory Junious shot Dallas Green on November 15, 2010. He shot him three times, twice in the chest and once in the right hand. Mr. Green fortunately survived and he brought this lawsuit. Ultimately, the jury found against Mr. Green and found in favor of Officer Junious on the only claim that went to the jury, the excessive force claim. Mr. Green's testimony was that he was unarmed at the time he was shot and down on the ground. Officer Junious' testimony was that Mr. Green was armed, Officer Junious saw a gun, and Mr. Green threw the gun as Officer Junious was shooting. There's obviously a stark contrast in their testimony. We're here today to ask this court to reverse the decision of the lower court because the jury instructions given in this case were not an accurate summary of the law and they effectively precluded Mr. Green from arguing that he was unarmed and allowing the jury to consider the fact that Mr. Green was unarmed at the time he was shot. First, this court's ruling in Gilbert v. Cook was improperly applied to this case and the jury received instructions that were not only not accurate but actually undercut Mr. Green and his counsel's credibility. There had not been a finding or a ruling whether Mr. Green was armed when Officer Junious shot him. The finding, by way of background, was a violation of probation finding that Mr. Green was on probation at the time of the shooting and a circuit court of Cook County judge found in a violation of probation proceeding that Mr. Green did have a handgun when he was being chased by a different officer, Officer Nwagu, at a gas station down the street from where the shooting took place. That was the only finding of the violation of probation proceeding. There was no finding that Mr. Green was armed when Officer Junious shot him. There was no finding at all about what happened in the backyard. Well, what was his theory of excessive force here? Mr. Green's theory of excessive force? He was armed but the officer shouldn't have fired so many shots or that he had dropped the gun in that yard before the officer fired those shots or what was his excessive force theory here? Mr. Green's excessive force theory was that he was unarmed at the time Officer Junious shot him. So did he testify that he ditched the gun between the gas station and the backyard  No, he testified that he did not have a gun that night at all. So how can that be consistent with accepting the conclusive finding of the state court that he did have a gun in the gas station? Because of the space and time between the incident in the gas station with a different officer and then the running through the gas station, through a bank parking lot and through... But you just told me that his theory of the case was that he didn't have a gun at all that night. Not in the CITCO, not while he was running, not at the time he was shot. That is correct. So how is that consistent with the probation revocation proceeding which he did not challenge through the state courts? He did not challenge that, you're right. Right, and so the court that revoked his probation said he had a gun in the CITCO. He didn't have to go any further than that in order to revoke probation. That was based on the videotape, the surveillance tape at the gas station. So he's foreclosed from either by preclusion doctrine or by heck or by some combination of the two from relitigating the issue about whether he had a gun in the CITCO. So he has to accept that. And so the theory of the case had to be something different. It couldn't be I was totally unarmed during the entire incident. The theory of the case was that he was unarmed when he was shot. The only claim that went to the jury was that when Mr. Green was shot by Officer Junius in the backyard, he was unarmed. What was the evidence or whatever observation of supposedly throwing a gun in a place two yards, two houses away from the CITCO? Officer, it was two houses away from the backyard where he was ultimately, Mr. Green was ultimately shot. Officer Junius testified that. Oh, I'm sorry. I'm not getting relative to the CITCO and where he was shot. How far was, what was the distance there, or do we know? It's about half a block, I believe, Mr. Okay. And I don't know how wide yards are. But whatever my understanding was that somebody saw him throw a gun away from the CITCO, not there, into some yard that was two yards, two houses at least, away from where it all started. Officer Junius, who shot Mr. Green, testified that as the shooting was taking place, as he was shooting, he saw Mr. Green raise the gun, and Mr. Green threw the gun, somehow in the act of shooting, threw the gun two yards away. And that's where that comes from. A gun is recovered from two yards away, two yards east of the shooting site. From where he was shot? From where he was shot, correct. Was it before or after two yards away? Was it a yard in between where he was shot and the CITCO? I believe it was two yards away from the CITCO, and then the backyard where he was shot, and then two yards away was where the gun was recovered. Was that gun connected to your client? Well, that brings up another point. The Illinois State Police agent, McEldowney. Okay. Before we get to that, was the gun connected testimonially to your client? I don't know the answer to that. I believe that Officer Junius identified the gun. Was the gun in evidence? The gun was in evidence, yes. And linked to him by the officers? Officer Junius testified, yes, I believe so. The gun that was recovered two yards away was the gun that he saw your client with? That's correct. And what about the other officer that fired the shot in the gas station, Officer Nwagwu? I don't know if he identified that gun, Your Honor. I don't know the answer to that. I can look. The only two witnesses to the shooting were Officer Junius and Mr. Green. One of the other problems, we believe, with using the Gilbert instruction in this case was that the district court used it to bar an Illinois State Police evidence technician from testifying about the lack of latent fingerprints on the gun. The evidence technician, Ms. McEldowney, was not allowed to testify at all on the theory that the issue of the gun had been resolved already in the Circuit Court of Cook County. Again, the plaintiff, Mr. Green, is allowed to proceed, and there's case law in this court, he's allowed to proceed on the theory that at some point, assuming he had the gun in the gas station, at some point after that, the force used against him was unreasonable. This court held that in Hardwick and in Evans. That's not an unreasonable or an improper theory and argument to make. Well, right. He can litigate the excessive force claim, but he has to do so consistent with the conviction or the probation revocation conclusion, which was that he was armed at the CITCO. So unless they can explain what came of the gun between the CITCO station and the backyard where Officer Junius fired the shots, I don't know how you can avoid that instruction being given. You have to wall it off. Either you're going to have to give up your excessive force claim against the officer who fired the shot in the CITCO and concentrate only on the claim against Junius, who fired the shots that actually injured him, so that you can wall off the whole CITCO part of it. I'm not sure that would have been effective. But you wanted to have it all, basically. You wanted to be able to essentially pursue your theory that he was unarmed throughout, and that's, in fact, what he testified to. And that is flatly inconsistent with the probation revocation conclusion, which was unchallenged. And so the instruction, it seems to me, was invited by his testimony and his whole theory of the case. To address the walling off, Your Honor, the claims against the three other officers, Winfrey, Archer, and Nuwagu, were directed out after the plaintiff's case. Right, at the close of the plaintiff's case, or was it at the close of all the evidence? I don't remember. I believe it was at the close of the plaintiff's case. Okay.  And he was foreclosed from testifying or otherwise contesting that he had a gun in the CITCO. That's true. And the first time the Gilbert instruction is given, it was after Mr. Green testified that he dropped a cell phone and not a gun at the CITCO gas station. The instruction is then given two or three more times when Mr. Green is saying that he was unarmed in the backyard. I believe he's asked and he answered something. I told him I'm unarmed, I'm unarmed, I put my hands up, and the Gilbert instruction is given. Whether he had a gun in the gas station and whether, and that goes to my point about credibility. It takes the credibility determination out of the jury's hands to be told directly after Mr. Green testifies, I believe at least twice, that he was unarmed. Well, that's why I asked whether the theory of the case was that he dropped the gun before Officer Junius started firing, either during the pursuit or in that backyard before Officer Junius started firing at him. And no, Mr. Green presented his own testimony that he was unarmed the entire time. That's the problem. Well, the gun was, there was the gun, he was complaining about, I don't remember her name, the person that he wanted to testify, there were no fingerprints and that sort of thing. But that yard, wasn't that where he was shot, where they found a gun? No. The yard where a gun was found was two yards to the east of where Mr. Green was shot. I don't know east or west. Which way does the sit go? The sit goes to the west and then the backyard where he shot and then two houses down to the east is where the gun was found. And how far was that? It's approximately half a block, a couple hundred yards. And between the houses was about 50 feet. I'm sorry. Go ahead. I was just going to say, the yard that's two yards on up, why were they even looking in that yard? I don't know, Your Honor, and that exactly goes to the point that Mr. Green should have been allowed to pursue that and to pursue that theory and not every time Mr. Green testified or twice when he testified he was unarmed to have the court interject, don't believe Mr. Green or his counsel or his witnesses he had a gun at the sit go gas station. He didn't want to admit that, obviously. He testified that he did not have a gun at the sit go gas station. Your Honor, I see I'm getting into my rebuttal time. Thank you. Thank you, Ms. Green. Ms. Masters. May it please the court. A jury found against Dallas Green on his excessive force claim against Officer Junius and there is no basis for reversal. Today I'm going to focus on Mr. Green's claims that the court and by barring the Illinois State Police witness unless the court has questions on the other issues we'll stand on the briefs. To clarify, no one has ever disputed that Mr. Green had the right to bring an excessive force claim, but as the questions indicated to Ms. Green, the problem in this case is the theory he adopted was he never had a gun the entire evening and that's why he was unarmed in the backyard and that theory was precluded to him. He didn't challenge the probation finding in Illinois State Court and that is where it needed to be challenged. He was not entitled to come into the district court and relitigate that issue. I want to answer a few questions that were asked about the gun and the locations here. What happened is there's a shooting at the Sitco Station. Mr. Green picks up the gun, runs away from the Sitco Station with it. He goes into the backyard at 832 East 87th Street. As he is being shot, Officer Junius sees him raise the weapon, tosses it to the side as he is being shot, and the weapon is found about two yards away, about 50 feet away. So 50 feet. 50 feet. Yeah, I think there was some confusion about distances. He's about 200 yards, I think, from the Sitco Station. And just to clarify, there are maps and there's an aerial photo and also a diagram in the record. They're both at R190 so the court can sort of see the layout of where everything was and where the gun is found. But that's why someone goes and looks at the yard. I believe, Judge Mannion, you had a question, why is someone even searching two yards away? It's because Officer Junius saw him toss the gun. Yeah, I'm getting a little bit confused about yards as distance and yards as places. So that's a little bit of a problem when you say it's only yards away. But he got shot. I guess, does Junius think he still had the gun when he was shooting at him? Yes, Officer Junius' testimony is that Mr. Green raised the gun at him, that he was armed, and that he tossed the gun in the process of sort of raising his arm and being shot. Yeah, but you don't throw it 50 yards. It's 50 feet, Your Honor. 50 feet even, but that's, you know. And Mr. What, are you being shot at? Okay, look, whatever it is, they found the gun nearby, and your complaint is they didn't let the person that examined the gun to look for fingerprints or something. We actually have no complaints. We think that the Her complaint. The verdict should be upheld. I do want to answer your, address a little bit your comment about throwing a gun 50 feet. It turns out, actually, that Mr. Green testifies that he was training to try and get into the, to be a professional basketball player, and he's actually asked, can you throw an object? Okay. Half a court, and he says, yes. Can you throw an object, a full court? He says, I believe so. Could you throw from a pitcher's mound to a batter? Okay, I believe you. So basketball or baseball are the frames of reference here, not a football field. No, but he has the ability to throw the gun. The court was correct in giving the instruction throughout testimony that is allowable under Viramontes, under Gilbert, and half the time here, except for one instance, in fact, it wasn't even objected to. This gets a little complicated because he's not, to bring his excessive force claim, which is not HECBARD, he's not required to admit that he had the gun in the CITCO. He's just bound by the state court's determination that he did so, which is why the theory of the claim becomes so important. And that's the difficulty I have here because he apparently wanted to pursue a theory that he was completely unarmed in the backyard where he was shot. But he went well beyond that and testified that he was unarmed in the CITCO. It wasn't a gun that he dropped. It was his phone. He picked it up and ran. And the case had not been yet narrowed to Officer Junius by the time, certainly at the beginning of the trial and at the time of his own testimony. So it was a complicated needle to thread, it seems to me, for the district judge here. Well, I think that the plaintiff pursued this theory that was really deeply problematic. In fact, to Your Honor's point, he's got a claim, in fact, against Officer Nwagiru until directive verdict is granted that Officer Nwagiru used excessive force. He's the person who shoots at him at the CITCO station because he has a gun, and that is the probation court's finding. So all of plaintiff's complaints rest on this idea that they should have been able to sort of just re-challenge that finding in the district court that he possessed a gun. And, in fact, he should have been able to say, I didn't possess a gun at all that evening. That is a direct attack on the probation court finding because obviously the greater includes the lesser. If the probation court found, as they did, that he possessed a gun at the CITCO station, that necessarily includes the finding. He had a gun that night, and he needed to testify to something other than I was just he needed to testify he either got rid of the gun or challenged the finding in the Illinois state courts. But what he couldn't do is what he tried to do here. Had he served his probation revocation time by the time of this trial? Your Honor, I believe he would have. But he was allowed to appeal the probation finding. Right, right, right. But I think, was he still in custody at the time of the trial? No, no. He was no longer in custody. In fact, I don't believe. Well, he was in custody while he was awaiting the probation court violation proceeding. Sure. But then he was let out, and then he was given two years additional probation because he was already on probation. Oh, so he got a time served plus two more years of probation disposition? Yes. Okay. So he's obviously in parole violation. I see. Yes, I mean, that's the initial finding in this case. He was a parole violator because he possessed a gun at the CITCO station. So he had no incentive to take an appeal if he got a favorable ruling, a time served plus, or a favorable sentence anyway. Actually, he did, Your Honor, because at the time that the district court finds him in violation, the district court even says, and it's in an excerpt, I mean, sorry, the probation court judge says to Dallas Green during the hearing, I know what this is about. I'm not going to decide your other matter. He then goes and files his civil lawsuit, this lawsuit. He absolutely has an incentive to file an appeal because he's going to be barred when he comes into federal court from saying, I didn't have a gun. That is an incentive in addition to the fact that he's going to be sentenced. There's this time lapse. The judge rules on the probation violation in, I believe it's May 2014, and for whatever reason, I'm sorry, May 2012, he's not actually sentenced until December 2014. I might have gotten my dates wrong there, but there's this time lapse. He certainly has incentive to appeal. Okay, so he wasn't sentenced for the probation violation at the same time as the revocation. Correct. There's a gap. Yeah. And in the meantime, then the charges, the new charges are dropped. Right, and he has this case, though. If he wants to challenge gun possession, he knows it's going to be an issue in this case, so he better be bringing his appeal in Illinois State Court. That in itself is incentive, and, of course, he is being sentenced to additional probation. That's an incentive. Regarding the Illinois State police witness, the court didn't abuse its discretion in barring her testimony either. First and foremost, the court clearly found her testimony would be speculative. Absence of latent fingerprints suitable for comparison would not be probative of whether Mr. Green had not, and that's what they wanted to establish, had not touched the gun. Well, that's not a proper basis, though. That's routine in criminal cases, isn't it? Testimony from fingerprint experts that they couldn't get fingerprints off of evidentiary items? That's really common defense testimony. That is true, but in the context of this case, where what Mr. Green sought to establish is, I never touched a gun, it's deeply problematic, and the court, alternatively, is certainly correct in finding that that type of testimony, he's trying to get a jury to draw an inference, that he never touched a gun, and therefore the lack of fingerprints suitable for comparison, which doesn't really tell you anything anyway, it doesn't tell you whether someone has or hasn't, shouldn't be allowed in because it's going to collaterally undermine the probation court finding. Because, mind you, we're talking about a time span of 20 seconds between what happens in the sitco station and what happens in the backyard, and there's no testimony. His claim all along is, I've never had a gun, and if he gets to ask the jury to draw the inference that my fingerprints weren't on the gun, therefore I never touched the gun, therefore we're going to go, it automatically means the probation court finding is wrong as well, because he never touched a gun. And that is the issue in this entire case. How much in advance was the ruling, advance of trial, was the ruling in limine on what the parties have been calling the Gilbert instruction or the collateral estoppel instruction? It was done the first day of trial the parties had brought. Okay. Motions in advance, well in advance, but the ruling was actually the first day of trial. The officer who supposedly saw the gun at sitco, and somebody saw he had a gun at sitco, and would that officer, I don't remember, what's the name of the woman that was going to... It's Officer Nwago who testifies, but another officer does as well. It's Officer Archer also testifies. Well, because the gun that was found, that I don't remember her name, the person that was not allowed to testify to say there may have been no fingerprints or something like that, that officer could have easily then been called and said, yeah, that's the gun. And I believe he was, Your Honor. I'll go back and double-check. So they already did that then? I believe that's what happened. So what's the issue then? I mean, somebody... In other words, this woman who would have testified, if she were to say that, that there's no fingerprints or something, she would be the one that said, so what? That's the gun that I saw him with at sitco, if the officer were to say that. Or could he have said that? He didn't need to say that because that woman didn't testify. Well, Your Honor, I believe then it's just harmless error, which is one of our other arguments. Well, that's okay. I'm just trying to say what could have happened if one officer would be able to say that's the same gun he had at sitco. Am I not coming through clear? Yep, Your Honor. I apologize. There's a gun that's thrown away in a yard, and there's a gun that the officer sees at sitco. Right. And the one that's thrown away at the yard, I assume that officer could have said, yeah, that's the one I saw at sitco. And I believe he did. Oh, he did? Yes, yes. I'm sorry. I thought I had said that. So they have this thing. Okay. Well, then that makes a big difference where the woman comes in and says it didn't have any fingerprints on it or something. She didn't get to testify. She did not. And that's one of the appealing, that's one of the reasons on appeal to have another trial because she should have been able to testify. But the barring of her testimony was proper because what they were doing was seeking to bolster. Their argument was she should be able to testify there's no physical evidence that Mr. Green possessed a gun. And that gets at the core of the probation finding because there's no distinction. The lack of suitable fingerprints for comparison also goes to the issue of whether he possessed the gun at the sitco station. There's 20 seconds that pass, and he can't come in and separate. Okay, but if the officer testified that's the same gun, that's okay. Now we'll let her talk about that. Well, then it's just harmless error to have barred her anyway, and all of this is for naught. And Mr. Green does not get a new trial. But the point is that you can't cabin sort of lack of latent fingerprints suitable for comparison to the moment in the backyard. And somehow, Sager, they gate that off from the idea of fingerprints suitable for comparison in the sitco station. And we know he had a gun in the sitco station. So again, those are all of the same piece. But if the officer testifies that's the same gun, that's inevitable. All right. If the court has no further questions, we'll rest on the brief and ask that the verdict be affirmed. Thank you, Justice Gersen. Ms. Grieve. Ms. Grieve, was the lawyer who represented him in the probation a violation of the same lawyer who represented him in the trial? I do not believe so, Your Honor. I believe it was a different firm. But I'm not sure. A couple of points based on the court's questions and counsel's argument. Mr. Green, while he was at one point a good athlete and a basketball player and testified as much, was never asked if he could throw a gun as he was being shot in the right hand, his throwing arm, two backyards over. So I think that that goes to Mr. Green's ability to testify and trying to testify credibly, which was undercut by the Gilbert instruction. We are not trying to, and Mr. Green did not try to, challenge the circuit court of Cook County's probation violation finding. That finding was what it was. Collateral estoppel did apply to that specific finding. His testimony directly challenged it. He testified that he didn't have a gun in the CITCO, that what he dropped was a phone. That is true, Your Honor. But we're not saying that on appeal we are not challenging that the Gilbert instruction. As to that particular fact, it was improper when Mr. Green testified he dropped his phone and not a gun. It's when the Gilbert instruction was used, when Mr. Green testified that he was unarmed in the backyard twice, and then again at the end of the case when all of the jury instructions were read is what we are challenging on appeal. Without explaining what became of the gun, no? Pardon me, Your Honor? He wanted to testify that he was unarmed, and in fact did testify that he was unarmed in the backyard where he was shot, without explaining what became of the gun. That's why I raised the point earlier that it was a tough needle for the district court to thread here because rather than voluntarily dismiss the claim against the other three officers after you got this adverse, I don't know if you were trial counsel. I take it not. But rather than dismiss the claim against the three officers other than Officer Junius when the adverse ruling in limine came about preclusion and concentrate the claim on excessive force by Junius and pivot the theory that that didn't happen. So the judge was really forced to navigate the preclusion issue as it pertained to a defense for all of the officers as the trial was ongoing. And he was trying to sort of have it both ways, it seems to me. What ultimately went to the jury, though, was that the question of was excessive force used in the backyard. And there was no need to give that final instruction, which ends with the final sentence is what you need to determine is whether the officer's use of force was reasonable under the circumstances. Even though the prior couple sentences talk about Mr. Green and the Sitco gas station and having a gun, it leaves the jury, and it was the final instruction read, leaves on a confusing note. It doesn't accurately state the law. Well, if it's confusing, it's only because he didn't have any theory for what became of the gun in the meantime. He's bound conclusively by the probation court's finding that he had the gun in the Sitco. And if he had no explanation for what happened to it after that, then his dilemma is his own and not on the defense. If I may briefly respond before I sit down. I think that the holding of Gilbert does not force him to do that. The holding does not make him have to testify in a certain way or preclude him from testifying a certain way. That's where the instruction comes in. He didn't testify at the probation. He did not, no. So what evidence do we have? Does he ever say he had a gun? Never? Never. All right. For the reasons in our briefs and the argument today, we ask for a reversal. Thank you. All right. Thank you, Ms. Grief. Thank you, Ms. Masters. The case is taken under advisement.